THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN WILLIS, Defendant-Appellant.

Second District    No. 84—0520

Opinion filed June 14, 1985.

G. Joseph Weller and Jan K. Dargel, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, John Willis, appeals from an order of the circuit court of Ogle County denying his motion to withdraw his plea of guilty to the offense of burglary. (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a).) Defendant contends he is entitled to a new hearing on his motion to withdraw his guilty plea since he was represented at the original hearing by the same assistant public defender against whom he made specific allegations of inadequate representation. He requests that this court vacate the circuit court's order denying his motion and remand the cause for the appointment of counsel other than the public defender's office and a new hearing.

The defendant was charged by information with one count of burglary. At arraignment, he initially pleaded not guilty, but he later entered into a plea agreement with the State. A plea hearing was held, and the defendant was present in court, represented by his appointed public defender, Robert Chadwick. The State explained that under the terms of the agreement, the defendant would receive a sentence of five years' imprisonment in return for his plea, a statement of his involvement in the offense, and his cooperation in two cases in other counties. The State also promised that he would not be charged with offenses arising out of those other counties, and that agreement as to that from the other counties was in the process of being secured. In response to the trial judge's inquiry, the defendant stated he understood that the State's Attorney had no authority over cases in those other counties. The trial judge then ascertained from the defendant that all of the terms of the agreement had been stated, and that he understood his plea of guilty meant he gave up his right to trial by a judge or jury, his right to silence, to confront witnesses against him, and the presumption of innocence. Before the plea was accepted, the defendant told the court that, due to problems with his nerves, he was taking phenobarbitol and sleeping pills, and that he had taken a phenobarbitol that morning. He said the drugs did not affect his understanding of the proceedings.

The trial judge told the defendant that as the judge he was not bound by the agreement, and that a sentence of not less than three

nor more than seven years could be imposed and, under certain circumstances, could be not less than seven years nor more than 14 years. In any case, the judge explained there would be a mandatory supervised release term of two years, and that a fine of not less than $1 nor more than $10,000 could be imposed.

When the defendant indicated he understood, the trial judge accepted the plea, and the State presented the factual basis for the offense. The defendant testified that he and five others drove to Peters' Garage in Rochelle, Ogle County, on January 17, 1984. The defendant broke into the garage in order to take "money and stuff." The State then said it would also prove that James Peters was the owner of the garage and that he had not given permission to anyone except police officers to enter his garage.

The trial judge then asked for evidence of the defendant's criminal history. The State indicated that although it had some difficulty obtaining the information, a "fairly accurate criminal history of the defendant" showed a 1981 conviction for felony theft and violation of bail bond, a 1982 conviction for possession of a stolen vehicle, and another felony theft conviction in eight counts for which he received a term in the Department of Corrections. The defendant stated he "never stole no vehicle," and that he was in Cook County jail in March of 1982 for bond jumping. He could not recall what the underlying charge was, but he and his brothers had some cases pending for which they received probation, but he got a 4½-year term in the Department of Corrections. In mitigation, defense counsel stated the defendant had been very cooperative with the authorities, and had cooperated in a number of matters being resolved.

The trial judge then found the defendant guilty of burglary, and sentenced him to five years in the Department of Corrections. Pursuant to Supreme Court Rule 605(b) (87 Ill. 2d R. 605(b)), the trial court admonished the defendant that prior to taking any appeal from his order, he must file within 30 days a written motion requesting leave to withdraw the guilty plea and that the trial court vacate the order entered; that he had the right to have an attorney help prepare the motion and that, if indigent, and he so requested, the court would appoint an attorney to help him prepare the motion; that he had a right to a copy of the report of proceedings, without cost if he could not afford to pay for it; that if the court allowed the plea to be withdrawn and the order vacated, the cause would proceed to trial; and that any charges agreed to be dismissed could be reinstated and set for trial. The trial court neglected to admonish the defendant that his motion to withdraw should include the grounds for the motion (87 Ill. 2d R.

605(b)(2)), and that any issue or claim of error not raised in the motion would be deemed waived (87 Ill. 2d R. 605(b)(6)).

Thereafter, the defendant's counsel, assistant public defender Robert Chadwick, filed a motion to withdraw the plea of guilty and vacate the judgment, alleging only that the defendant's plea was involuntarily entered.

The defendant then filed, *pro se,* a motion to withdraw guilty plea and to vacate judgment. Also filed *pro se* on that date were a notice of appeal, motion for appointment of counsel, motion to proceed in *forma pauperis,* designation of trial record to be included on appeal, a docketing statement, proof of service, and motion for trial transcript and common law records. In the docketing statement under "GENERAL STATEMENT OF ISSUES PROPOSED TO BE RAISED" was written: "Ineffective assistance of counsel in violation of equal protection and due process, improper charge of burglery [*sic*], excessive bond."

An amended motion to withdraw plea of guilty and vacate judgment was filed by defense counsel, stating that, in addition to the allegation that his plea was involuntary, the defendant alleged that he was inadequately represented by his court-appointed counsel and that the State reneged on a promise of a two-year sentence of imprisonment. Also filed on that date was counsel's certificate in compliance with Supreme Court Rule 604(d) stating that he had consulted with the defendant concerning his contentions of error, that he had examined the court file and the report of the plea proceedings, and that he had made amendments to the motion as necessary. 87 Ill. 2d R. 604(d).

At the hearing on the defendant's motion to withdraw his plea, the defendant was the only witness to testify on his behalf, and his counsel was the same counsel who had represented him throughout the earlier proceedings, Robert Chadwick. Chadwick asked the defendant to specify the grounds on which he based his motion to withdraw his guilty plea. The defendant testified that he did not understand what he was doing on the day he pleaded guilty due to the effect of the drugs he was taking. The defendant testified:

"A. [Defendant] Well, I was taking medication and I copped out for five years because you told me if I didn't take the five and I come [*sic*] before the judge I may get maybe 13, 14 years.

Q. [Defense Counsel] Okay, go ahead, anything else you want to say about that?

A. No, I don't know too much about the law but that's why

I copped out.

Q. Okay. And you didn't understand what you were doing because—

A. No, I didn't, I didn't.

Q. Those drugs had an effect on you?

A. The drugs, they made me drowsy and stuff.

Q. Now, the second ground you said is that you were given inadequate representation by your counsel. I was your appointed counsel?

A. You was, correct.

Q. Right. Would you explain to the Judge why you felt I didn't adequately represent you?

A. Well, I can't say it. I really don't know.

Q. That's important. If there is anything—

A. You know, I said I had 15 counts and you come back over there and the State's Attorney and Mr. Schumacher there, he had two counts of armed robbery on my brother, you never give [sic] me a rap sheet. You told me Mr. Schumacher, he seen [sic] my rap sheet and Dennis over there, pre-trial investigator, he come over to the jail and run a pre-trial thing. He said you had a rap sheet there. You told me Schumacher didn't see the rap sheet. When did you see the rap sheet?

Q. We had—Well, the incorrect rap sheet was at the State's Attorney's office initially.

A. You told me you couldn't get a rap sheet because—

Q. Okay, are there any other reasons?

A. Well, no, not really.

Q. Okay."

The defendant's third and final contention was that, following his arrest, Detective Woolbright told him he would get State's Attorney Schumacher to agree that if the defendant would cooperate with them and give them information about crimes in other counties, that he would get two years and that he would not be charged with any other offenses arising out of those counties. In relating the facts surrounding the State's alleged two-year offer, the defendant alluded to the fact he had said he wanted to "see a lawyer, talk to a lawyer," but that the investigator told him "he don't need no lawyer." Based on the promise of two years, the defendant testified he cooperated with the State and told them "where the stuff's going to and everything, even the man's name we were going to."

In concluding his direct examination of the defendant, counsel asked him:

"Q. Mr. Willis, it's important, is there any other grounds [*sic*] or any other reason why you think you should be able, allowed to withdraw your plea of guilty, any other reason?

A. [Defendant] Because I was railroaded and you said come in front of Judge Lenz, I would get 14 or 30 years, you told me that, and there were two counts of armed robbery on my rap sheet to hold it up.

MR. CHADWICK: I have no further questions, your Honor."

According to the record, the State had what was later discovered to be the rap sheet of another man named John Willis and that based on that incorrect sheet, the State offered a 14-year sentence which was changed to five years after the defendant contacted his parole officer and the mistaken rap sheet was detected. The defendant testified the rap sheet was not corrected before he pleaded guilty, however, and that he agreed to the five-year term because his attorney was still advising him he had two counts of armed robbery on his rap sheet and that if he went before Judge Lenz he was going to get 14 or 30 years. On redirect examination, defendant testified that in response to the report from his attorney that he "got them [the State] down to five [years]," he told counsel:

"I told you I didn't want to take no five. I told you from the beginning I had two years promised to me. You said I should of [*sic*] got it on [*sic*] black and white."

Defense counsel presented no other witnesses. State's Attorney Schumacher was then allowed to take the stand and testify under oath in narrative fashion to his recollection of the conversation with the defendant. He testified the agreement with the defendant only concerned possible immunity from prosecution on charges in other counties and the only discussion about any sentence took place through defendant's counsel.

In summation argument, defense counsel commented that defendant:

"was frightened because there was an incorrect rap sheet initially which indicated to everyone that he had much more serious crimes than he actually had on his own rap sheet and that reflected in the offer which originally was made and this alarmed Mr. Willis considerably and I believe that did have an effect on him during the, during the plea negotiations and finally during the plea itself.

He was under the, under medication at the time he made the plea for nerves. His nerves were understandably bothering him

and in addition, the effect of the drug was to make him drowsy and he testified that this did also have an effect on his understanding the nature of the proceedings and understanding exactly what was going on fully.

And, Your Honor, I would let Mr. Willis' testimony stand as to what he heard between Detective Woolbright and the State's Attorney. He was very clear and unequivacal [*sic*] on what he heard the offer was, the two years was offered to him at that time. There was no mistake about it. He was offered this and I think he would have the ability to remember what did happen and that's his testimony under oath and in fact he was offered two years for clearing up these crimes in other counties and he fulfilled his part of the bargain. He did clear up all these matters for the State's Attorneys involved and he expected his two years."

Defense counsel concluded that defendant "more or less felt he had to take the agreement that he was given."

The trial court denied the defendant's motion to withdraw his guilty plea, finding that defendant had not sustained the burden of proof as to the allegation that he had received inadequate representation of counsel.

The defendant appeals raising this single issue: whether he is entitled to a new hearing on his motion to withdraw his plea of guilty.

Defendant contends he is entitled to a new hearing on his motion to withdraw his guilty plea under the circumstances detailed above. He argues Chadwick's continued representation of him caused a *per se* conflict of interest to arise which required Chadwick to withdraw from the case. We agree.

It was established in *People v. Norris* (1977), 46 Ill. App. 3d 536, that representation of a defendant during a hearing on the defendant's motion to withdraw a guilty plea presents a situation analogous to that of a post-conviction proceeding. Citing *People v. Smith* (1967), 37 Ill. 2d 622, and *People v. Terry* (1970), 46 Ill. 2d 75, the *Norris* court noted that in such proceedings, it has been recognized that an inherent conflict of interest confronts the public defender's office when an assistant charges that another assistant incompetently represented the petitioner at trial. "There is too great a possibility that the representation will be less than enthusiastic." (*People v. Norris* (1977), 46 Ill. App. 3d 536, 541.) Referring to Disciplinary Rule 5—102(a) of the Illinois Code of Professional Responsibility (87 Ill. 2d R. 5—102(a)), the *Norris* court stated an attorney must withdraw when he learns or it is obvious that he or one in his office should be called

as a witness on behalf of his client. The court found that because the attorney there stated he would not be a witness for the defendant, he must have recognized the potential conflict, and should have withdrawn. Accordingly, the court vacated the denial of the defendant's motion to withdraw his guilty plea and remanded the cause with the proviso that counsel other than the public defender be appointed. Cases subsequent to *Norris* have reach similar results. *Cf., e.g., People v. Ball* (1977), 50 Ill. App. 3d 36 (counsel other than public defender should be appointed to represent defendant at hearing on motion to withdraw guilty plea based *inter alia* on the ground defendant lacked mental competence to enter a guilty plea where assistant public defender who represented defendant at entry of plea might feel an inclination to protect his reputation since he had previously represented to the court that the defendant was competent to plead guilty); *People v. Freeman* (1977), 55 Ill. App. 3d 1000 (defendant need not demonstrate factually that he was prejudiced by the appointment of another member of the public defender's office to represent him since a *per se* conflict of interest arose when the second appointed public defender was placed in the incongruous position of having to question the actions of his own office by virtue of the first assistant public defender's alleged coercion of the defendant to plead guilty); and *People v. Fields* (1980), 88 Ill. App. 3d 821 (where the court found defendant's attorney was under a duty to withdraw from the case when defendant's statement requesting a new trial and alleging counsel's failure to call known alibi witnesses came to his attention).

The State contends the defendant's claim of ineffective representation fails to meet the requirements set forth in this court's opinion in *People v. Clem* (1979), 72 Ill. App. 3d 163. In that case, the defendant's motion to withdraw his guilty plea contained nothing more than an assertion that his counsel in the guilty plea proceedings was incompetent. Although recognizing that actual prejudice need not be demonstrated, the court held that such claims must at least be substantiated in some way by factual allegations. (72 Ill. App. 3d 163, 169.) In so holding, the court noted defendant's claim at bar there fell far short of the claims made by the defendant in *Freeman,* or even the claim made by the defendant in *Taylor. (People v. Freeman* (1977), 55 Ill. App. 3d 1000; *People v. Taylor* (1977), 48 Ill. App. 3d 925.) In *Freeman,* as noted above, the defendant alleged counsel had coerced him into pleading guilty; in *Taylor,* defendant alleged he had entered the plea in reliance on his attorney's advice that he felt defendant stood an excellent chance of receiving probation.

The State argues the defendant here, like the defendant in *Tay-*

*lor,* merely had his hopes for a light sentence frustrated. Since such a claim presents no basis for the withdrawal of a guilty plea, the potential conflict of interest which might have arisen due to the defendant's being represented by the same counsel who had raised his expectation of leniency could not have influenced the result and was, therefore, harmless error.

The State also argues the defendant's assertion he was promised a two-year sentence in return for his cooperation was thoroughly refuted by the sworn statement of the State's Attorney at the hearing, and the fact there was an earlier incorrect rap sheet "in no way affected the sentence which Willis ultimately received." Finally, the State relies on *People v. Gustafson* (1979), 75 Ill. App. 3d 497, in support of its position that "Willis' vague and baseless allegation of incompetency at the guilty plea proceeding did not bar this same attorney from conducting the hearing on the motion to withdraw guilty plea."

As to this last argument, *Gustafson* is distinguished on its facts. That case involved representation of the defendant at his sentencing hearing by the same attorney who represented him at trial. Defendant's presentence report in that case included a written statement in which he expressed his general dissatisfaction with his court-appointed attorney's representation during the course of the trial in chief. In determining that no error occurred, the court noted that it failed to find any basis in which a *per se* conflict of interest could be found to exist. The defendant was simply unhappy with his attorney and the outcome of his trial. Also, the defendant's complaint came at the sentencing hearing and, unlike a post-conviction hearing, the attorney was not placed in the position of having to argue his own ineffectiveness.

In contrast here, one of the grounds of the defendant's amended motion to withdraw his guilty plea was that his counsel was ineffective and argument as to that point would be expected to be made at the plea-withdrawal hearing. Thus, defense counsel was placed in the position of having to argue his own ineffectiveness in support of the defendant's motion to withdraw. Certainly, counsel placed in such a position must be seen as laboring under divided loyalties. As is evident from one of the excerpts set forth in the facts, counsel here actually was placed in the position of responding to a question posed to him by the defendant as to when he had seen the rap sheet. Counsel's answer was clearly not definitive, and counsel almost immediately changed his line of questioning.

Also specifically in contrast here is the fact defendant was not

simply generally unhappy with his counsel's performance. Factual allegations in support of his charge of ineffectiveness sufficient to withstand challenge under the *People v. Clem* standard were clearly brought out at the hearing on the motion to withdraw the plea.

At the hearing, defendant unequivocally testified he pleaded guilty and accepted the five-year sentence because his attorney represented to him that if he went before the judge, he would receive a sentence of between 14 and 30 years, and that there were "two counts of armed robbery on [his] rap sheet to hold it up." Defendant denied that the rap sheet mix-up was cleared up before he entered his plea, even though he did understand that the State had revised its first offer of 14 years down to five years. Defendant testified that because he was promised two years, he did not want to take the five, but that his attorney kept telling him his rap sheet would justify the court's imposing a much heavier sentence.

The circumstances surrounding the incorrect rap sheet, and the extent to which counsel's advice to his client was premised on what might happen if he insisted on a trial, was something that should have been explored fully during the hearing. Because it was counsel's performance below that was at issue, however, we believe a *per se* conflict of interest existed which required that counsel withdraw from representation of the defendant or, at the very least, that the court order that other counsel be appointed.

We note that when defendant filed his *pro se* motion to withdraw, he also filed a notice of appeal and requested the appointment of counsel. The request for counsel is one point which distinguishes the instant case from *People v. Mallette* (1985), 131 Ill. App. 3d 67, cited by the State here as additional authority. In *Mallette,* this court declined to remand the cause for the purpose of the appointment of new counsel and for a new hearing on the defendant's motion for a new trial based on the assertion of ineffective assistance of counsel. This court expressed its belief that the supreme court's decision in *People v. Krankel* (1984), 102 Ill. 2d 181, did not establish a *per se* rule that all *pro se* motions for a new trial which allege ineffective assistance of counsel mandate the appointment of new counsel to assist in the motion, irrespective of the basis of the motion and in the absence of a request for new counsel.

In reaching its decision, this court in *Mallette* considered it significant (1) that the defendant did not request other counsel, and himself argued the issue of ineffectiveness at the post-trial hearing; (2) that the basis for the ineffectiveness claim—counsel's unpreparedness due to day-of-trial substitution of counsel as a result of the first appointed

counsel's illness—was an issue which the defendant could present *pro se,* and which the trial court could determine based on its knowledge of defense counsel's performance at trial; and (3) that since the defendant argued the issue *pro se,* and counsel did not make any arguments to refute defendant's contention, counsel was never placed in conflict with the defendant. The instant case is distinguished on those points insofar as the defendant did file a request for appointment of counsel and, more importantly, the need for the appointment of other counsel should have been glaringly apparent during the course of the hearing when defendant began to ask questions and counsel to respond. Counsel in this case was clearly placed "in conflict" with the defendant. The instant case is also distinguished in that the issue raised was one which required preparation and presentation of evidence in order to develop the facts surrounding the alleged promise of a two-year sentence, and the actual extent of defendant's rap sheet. No formal presentence report was prepared in connection with the defendant's sentencing, and defendant himself disputed the facts presented to the court by the prosecutor as to the defendant's criminal history. This lends further credence to defendant's testimony that the rap sheet error was not completely cleared up by the time he entered his plea.

As noted by the defendant, the question whether counsel was actually incompetent so as to have caused the defendant prejudice is not yet germane. Supreme Court Rule 604(d) contemplates the assistance of counsel at a hearing on a motion to withdraw a guilty plea. The assistance rendered should be free of conflict of interest. The circumstances of this case show there was a blatant *per se* conflict of interest, and that a new hearing with appointed counsel other than the public defender's office is merited.

The judgment of the circuit court of Ogle County is vacated and the cause remanded for a new hearing at which new counsel appointed from other than the public defender's office should represent the defendant.

Judgment vacated; cause remanded.

SCHNAKE and STROUSE, JJ., concur.