2020 IL App (1st) 171888-U

No. 1-17-1888

Order filed December 30, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 10651 |
| | ) | |
| TRASHUN THOMAS, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's aggregate 23-year sentence for attempt first degree murder is affirmed where the record establishes that, in imposing sentence, the trial court considered the circumstances of the case and all relevant sentencing factors.

¶ 2     Following a bench trial, defendant Trashun Thomas was convicted of three counts of attempt first degree murder (720 ILCS 5/9-1(a)(1), 8-4(a) (West 2014)) and sentenced to an aggregate term of 23 years' imprisonment: consecutive terms of eight, eight and seven years. On appeal, defendant contends that the trial court abused its discretion in imposing the sentence

because it was under a misapprehension of fact regarding his home life, which was a critical mitigating factor given that he was 17 years' old at the time of the offense. We affirm.

¶ 3     Defendant, along with codefendant Levontae Lawson was charged by indictment with ten counts of attempt first-degree murder, three counts of aggravated battery, and two counts of aggravated discharge of a firearm, arising from events which took place on May 17, 2014. Defendant and Lawson were tried in a joint bench trial.[1] Because defendant does not challenge the sufficiency of the evidence to sustain his conviction, we recount only those facts necessary to resolve the issue on appeal.

¶ 4     The evidence at trial showed that, in the evening of May 17, 2014, a group of teenage boys was playing basketball on 70th Street, between Paulina Street and Marshfield Avenue in Chicago. The boys playing basketball included Dale Jones, Marteon Brakes, Dequan King, Ronnie Lofton, and Martez Brakes.[2] At approximately 7:00 p.m., they saw a tan car drive by "more than once." A short time later, two people emerged from an alley that was 15 to 20 feet away, displayed guns to the group, and began shooting. Jones and Marteon recognized the two people as defendant and Lawson.

¶ 5     Combined, defendant and Lawson discharged their guns ten or more times at the group. Jones was shot in his right leg, which caused two broken bones and "messed up [his] calf muscle," requiring four surgeries, with the bullet still being inside his leg at the time of trial. King was shot in the lower part of his right leg, with the bullet traveling through his leg, which required "up to

---

[1] Codefendant Lawson was convicted of the same offenses and is not a party to this appeal.
[2] Because Marteon and Martez share the same last name we will refer to them by their first name.

seven surgeries" and hospitalization for two weeks. Martez was shot in his left foot, fracturing a bone in that foot.

¶ 6    Jones and Marteon identified defendant and Lawson from photo arrays, and in court while testifying. At the scene, police officers collected ten expended shell casings, which were determined to have been fired from two firearms. Police officers subsequently arrested defendant and Lawson.

¶ 7    The trial court found defendant guilty of attempt first degree murder against Jones (Count VIII), King (Count IX), and Martez (Count X), but not guilty with regard to the attempt first degree murder charges as to Lofton and Marteon. The court also found defendant guilty of aggravated discharge of a firearm against Marteon (Count XV) and Lofton (Count XIV), and aggravated battery as to Jones (Count XI), King (Count XII), and Martez (Count XIII). The court denied defendant's motion for a new trial and his *pro se* motion for remand to juvenile court.

¶ 8    At sentencing, defendant's presentence investigation report (PSI) indicated that he had no criminal record prior to the instant offense. The PSI also indicated that defendant was born in 1996 in Chicago, and was raised by his maternal grandmother from birth to age 16, because his mother was incarcerated. After his grandmother passed away when he was 16, defendant was raised by his maternal aunt. Defendant reported having a "good" relationship with his parents and maintained contact with them at least three times a week. Defendant also reported having a "close" relationship with his natural siblings. He told the investigator that he had an "ok" childhood, because his mother was incarcerated and he "received whoopings as a form of discipline." He also told the investigator that he ran away from home twice as a result of disagreements with his aunt.

He denied having any involvement with the Department of Children and Family Services or any family history of alcohol or substance abuse.

¶ 9    At the time of the offense, defendant was attending Harper High School in Chicago, was involved with the basketball, football, track, and wrestling teams, and had "good" relationships with fellow students and teachers. Defendant did not graduate from Harper High School because he was arrested for the current case, but "received a high school diploma from York school located in the CCDOC in 2015." Defendant denied having any present or past affiliation to a street gang; however, the investigator discovered his Chicago Arrest Record reflected that he was a member of the street gang "7-0" Gangster Disciples. Defendant denied any past or present usage of alcohol or illicit drugs.

¶ 10    At sentencing, the State argued in aggravation that "this easily could have been a case with five dead bodies." The State pointed out that defendant and Lawson collectively fired ten shots at the victims, and there was no reasonable explanation for the number of shots fired that day "other than to kill or do great bodily harm or serious bodily injury." Defendant's conduct caused or threatened "serious harm" because three of the victims were shot, but the other two ran for their lives and got away. The State also argued the sentence was necessary to deter other individuals from committing the same crime. The State emphasized the injuries the victims sustained and requested a sentence above the minimum with the application of a firearm enhancement.

¶ 11    In mitigation, defense counsel tendered to the court copies of defendant's high school diploma, and certifications and awards he received while he was at school. Counsel argued that defendant was using his time "wisely" while in custody to finish high school. Counsel also

requested the court not to give defendant a firearm enhancement, as he was 17 at the time of the offense and asked for the minimum available sentence. Defendant chose not to speak in allocution.

¶ 12    In announcing sentence, the court stated that this case was the "poster child for the ravages of gun violence," and affected everyone associated with this case, including defendant, and the family members of both the injured and defendant. The court acknowledged defendant was a first-time offender, and 17 years old at the time of the offense, and graduated from high school after his arrest, "which is very much to [his] credit." The court stated defendant came from a "good family background" pursuant to his PSI, so "it's a mystery" why he would "pick up guns and very much indiscriminately fire up this street." The court noted that as "horrid" as it was that three people were shot, "[i]t's astonishing that more persons were not hurt by virtue of the actions in which Mr. Lawson and [defendant] engaged."

¶ 13    The court, however, elected not to apply the firearm enhancement, because defendant was 17 years old, had no criminal history, came from a good family, and worked hard to get his high school diploma. It found the fact it had to sentence defendant as an adult "disappointing" given the mitigating evidence presented. Nevertheless, notwithstanding the "substantial mitigation," the court also noted the case had "substantial aggravation." The court recounted the facts of the case and that three people were shot "for no seeming reason while they engaged in the innocent and worthwhile [*sic*] of playing basketball in a spring afternoon with their friends * * * not doing anything to engender or anticipate being victimized in the manner in which they did." The court pointed out that that Jones and King underwent multiple surgeries for the wounds they sustained, which continued to limit their enjoyment of life. Noting defendant was found guilty of Class-X felonies, the court sentenced him to consecutive terms of imprisonment of seven years for the

attempt murder of Martez, and eight years each for the attempt murders of King and Jones, who the court found both suffered severe bodily injury. The court merged the other counts into the three counts of attempt first degree murder. Defendant did not file any post-trial motion challenging his sentence.

¶ 14    On appeal, defendant argues the trial court abused its discretion in sentencing him, because the court was "under a mistaken belief" that he came from a "good family" with no struggle, or hardship. Defendant requests that we remand his case for resentencing.

¶ 15    In setting forth this argument, defendant acknowledges he did not file a motion to reconsider sentence and, accordingly, the issue has been forfeited for review. Nevertheless, he requests we review his appeal under either prong of the plain error doctrine or, in the alternative, as an ineffective assistance of trial counsel claim.

¶ 16    Sentencing issues raised for the first time on appeal may be reviewed under the plain-error doctrine. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 11. In the sentencing context, a reviewing court may address a forfeited claim if a clear and obvious error occurred and either (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so serious that it deprived the defendant of a fair sentencing hearing. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). "When a defendant fails to establish plain error, the result is that the 'procedural default must be honored.' " *People v. Naylor*, 229 Ill. 2d 584, 593 (2008) (quoting *People v. Keene*, 169 Ill. 2d 1, 17 (1995)). The initial consideration in this analysis is whether a clear and obvious error occurred at all. *Hillier*, 237 Ill. 2d at 545. Here, we find no error.

¶ 17    A trial court's sentencing decision is reviewed under the abuse of discretion standard of review. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court will be found to have abused

its discretion where the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). The trial court has broad discretion in imposing a sentence, and its sentencing decisions are afforded great deference, because the trial judge "observed the defendant and the proceedings," and is in a better position to weigh factors such as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Id.* at 212-13. The reviewing court " 'must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Id.* at 213 (quoting *Stacey*, 193 Ill. 2d at 209).

¶ 18    Here, we find that the trial court did not abuse its discretion in sentencing defendant. In this case, defendant was convicted of three counts of the Class-X offense of attempt first degree murder (720 ILCS 5/9-1(a)(1), 8-4(a), (c)(1) (West 2014)), each, with a sentencing range of 6-30 years' imprisonment to be served consecutively as the court made a finding of severe bodily injury. 730 ILCS 5/5-4.5-25(a) (West 2014); 730 ILCS 5/5-8-4(d)(1) (West 2014). Accordingly, the aggregate sentencing range for the three convictions was 18 to 90 years' imprisonment. Defendant's aggregate 23-year sentence falls within these statutory guidelines and is, therefore, presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 19    That said, we note that where consecutive sentences are imposed, they "do not constitute a single sentence and cannot be combined as though they were one sentence for one offense." *People v. Carney*, 196 Ill. 2d 518, 530 (2001). Rather, in this case defendant was sentenced for three offenses of attempt first degree murder to permissible statutory terms of eight, eight and seven years' imprisonment to be served consecutively. A sentence that falls within the statutory range is presumed to be proper and "will not be disturbed absent an affirmative showing that the sentence

is at variance with the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense." *Knox*, 2014 IL App (1st) 120349, ¶ 46. Defendant has not made that showing.

¶ 20   Although defendant's sentence falls within the statutory range, he argues the trial court abused its discretion in sentencing him, because the court based its sentence on inaccurate facts not supported by the record. In particular, he contends the court misapprehended the circumstances of his family life, finding it to be "good" although the PSI indicated his family background was "less than ideal," due to, *inter alia*, his mother's incarceration, his having been raised by his grandmother and aunt, and his running away from home twice due to disagreements with his aunt. Defendant argues that because he was 17 years old at the time of the offense, his family background was a particularly relevant mitigating factor. He maintains that although the trial court used its misapprehension that he was from a good family background as reasoning to not apply the firearm enhancement, it also used it in aggravation, as evidenced by its confusion regarding his reason for committing the offense.

¶ 21   We initially note that the trial court is presumed to consider "all relevant factors and any mitigation evidence presented" *(People v. Jackson*, 2014 IL App (1st) 123258, ¶ 48), but has no obligation to recite and assign a value to each factor *(People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011)). While defendant argues that the trial court made a mistake of fact regarding his home life, he is essentially arguing that the trial court failed to take into consideration the specific circumstances of his home life as mitigating evidence. We disagree.

¶ 22   Here, the record shows that in announcing sentence, the court stated that defendant came from a "good famil[y]" as part of its reasoning for not applying the firearm enhancement, but also that because of his background, "it's a mystery" why defendant would "pick up guns and very

much indiscriminately fire up this street." Further, although defendant's PSI noted that his relationship with his parents was "good," it also chronicled certain difficulties in his childhood including his mother's incarceration and disagreements with his aunt which caused him to run away from home. Defendant argues that the court did not consider these specific circumstances when sentencing him, in essence, because it did not address these circumstances in its oral pronouncement.

¶ 23    However, despite defendant's contention, he has not affirmatively shown that the court did not consider these specific circumstances of his family life when imposing sentence. Indeed, the court specifically indicated it reviewed the mitigation evidence as well as defendant's PSI, which contained a detailed description of his background. As noted above, the court had no obligation to recite and assign a value to this specific factor when it sentenced him. *Perkins*, 408 Ill. App. 3d at 763. As the record indicates, the court did consider defendant's home life as a factor in mitigation and used this factor as a basis for not applying the firearm enhancement to his sentence. The court had no obligation to fully detail its reasoning for its comment that defendant's childhood was "good," including outlining all the difficulties he faced growing up. As such, defendant's argument is merely a request for this court to reweigh the factors in aggravation and mitigation and substitute its judgment for that of the trial court. This we will not do. *Alexander*, 239 Ill. 2d at 213 (where the sentencing court adequately considered the appropriate factors, "the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed those factors differently").

¶ 24    Moreover, the record shows that defendant received near the minimum sentence for each of the three attempt murder offenses, and in imposing these terms, the court did not focus on

defendant's family background in aggravation. Rather, the court recounted the facts of the case and that three people were shot. The court emphasized the seriousness of the offense, including the fact that it was "astonishing" that more people were not hurt by defendant's actions that day. It is well-settled that the seriousness of the offense is the most important factor in sentencing, and the trial court is not required to lend more weight to the mitigating factors than to the seriousness of the offense. *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 94. Given this record, we do not find the trial court abused its discretion in sentencing defendant to the three consecutive terms, each only one (Count X) or two years (Counts VIII & IX) above the mandatory minimum sentence for the offense of attempt first degree murder.

¶ 25    Having found no error, there can be no plain error, and therefore, defendant's procedural default must be honored. See *Naylor*, 229 Ill. 2d at 593. Because there was no plain error, we need not address defendant's alternative argument that his defense counsel was ineffective. See *People v. Jaimes*, 2019 IL App (1st) 142736, ¶ 58 (where there is no plain error, there can be no ineffective assistance of counsel).

¶ 26    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 27    Affirmed.