2020 IL App (1st) 181021-U

No. 1-18-1021

Order filed December 18, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 4893 |
| | ) | |
| DEVONTE GOSHA, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's 11-year sentence for aggravated kidnaping over his contention that it was excessive.[1]

¶ 2    Following a bench trial, defendant Devonte Gosha was convicted of three counts of aggravated kidnaping with use of a mask in an attempt to conceal his identity (720 ILCS 5/10-2(a)(4) (West 2016)) and one count of kidnapping (720 ILCS 5/10-1(a) (West 2016)) and

---

[1] This case was added to Justice Rochford's docket on December 7, 2020.

sentenced to concurrent sentences: 11 years' imprisonment for each aggravated kidnaping and 4 years' imprisonment for kidnapping.[2] On appeal, defendant argues his 11-year sentence for aggravated kidnaping is excessive. We affirm.[3]

¶ 3    Because defendant does not dispute the sufficiency of the evidence, we recite only those facts necessary to our disposition.

¶ 4    The evidence at trial established that, around 9:30 p.m. on March 7, 2016, defendant and codefendants, Justin Harris and Marliss Pelmer, forced their way into Nelson Arias's penthouse apartment (the apartment) in Oak Park.[4] On that day, Mariarosaria Provinzano and Sara Minahi went to the apartment. As they walked up the stairs, they passed three black men who were not wearing masks. Minahi and Provinzano went inside the apartment and then returned to the hallway shortly thereafter where they saw the three men, now wearing masks and armed with guns. The three men forced Minahi and Provinzano back into the apartment and locked them in a room after taking their phones. The men pistol whipped Arias, Amarzaya Makhbal, and Michael Silva,

---

[2] We note that defendant's mittimus incorrectly lists his kidnapping conviction on count 8 as aggravated kidnaping while armed with a firearm. Although count 8 was charged as aggravated kidnaping with use of a firearm (720 ILCS 5/10-2(a)(6) (West 2016)), the trial court explicitly found (1) defendant guilty of the lesser included offense of kidnapping (720 ILCS 5/10-1(a) (West 2016)), and (2) the State failed to prove defendant was armed with a firearm. The court's oral pronouncement is the court's judgment, and it controls over the mittimus. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 62. The State requests that this court correct the mittimus. However, this request is to be made before the trial court. Ill. S. Ct. R. 472(c) (eff. May 17, 2019) ("No appeal may be taken by a party from a judgment of conviction on the ground of any sentencing error *** unless such alleged error has first been raised in the circuit court.").

[3] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

[4] Codefendant Harris was tried with defendant in a separate but simultaneous bench trial and was also found guilty of aggravated kidnaping and kidnaping. Codefendant Pelmer pled guilty to armed robbery with use of a bludgeon. Neither codefendant is a party to the instant appeal.

leaving each of them bloody, and demanded money from them. The men then forced Provinzano, Minahi, Makhbal, Arias, Mariela Maldonado, and Silva into a bedroom together.

¶ 5    The men took phones, jewelry, and a bag containing over $14,000, and then left the apartment. Police arrested defendant and Harris on the rooftop of the building, while Pelmer was arrested nearby after an officer observed him flee from Arias' building and pursued him. An officer observed defendant throw an item off the rooftop; a gun was recovered from that area. Police also recovered a "broken" Taurus pistol at the scene. Defendant was wearing gloves stained with blood from Arias and Silva. Provinzano and Arias identified defendant and Harris in a show-up after their arrests.

¶ 6    The court ultimately found defendant guilty of three counts of aggravated kidnaping with use of a mask in an attempt to conceal his identity with respect to victims Provinzano, Minahi, and Maldonado and kidnapping with respect to Arias. The court specifically found that the State failed to prove beyond a reasonable doubt that defendant was armed with a firearm.

¶ 7    At sentencing, the court noted it reviewed defendant's presentence investigation report (PSI). The PSI revealed that defendant, who was 23 years old at the time of sentencing, had a 2008 juvenile adjudication for burglary for which he received one year of probation; a 2009 finding of delinquency for aggravated battery; a 2009 finding of delinquency for aggravated battery for which he was committed to the Illinois Youth Center and given five years' probation; a 2013 conviction for "obstructing identification" for which he received nine days' imprisonment; a 2014 conviction for "CTTP" for which he received two days' imprisonment; a 2018 conviction for aggravated battery of a peace officer for which he received three years' imprisonment; and a 2018 conviction for public indecency for which he received one day of imprisonment.

¶ 8    The PSI further showed that defendant was raised by his mother and had no relationship with his father, a convicted felon. Defendant described his childhood as good and denied any history of abuse, "including physical, mental, sexual, alcohol, or substance abuse." Nevertheless, allegations of abuse or neglect were made against his mother from 2007 through 2016 and he was placed in various group homes, which made his life "chaotic and difficult." He withdrew from school in 11th grade after being suspended several times for fighting and had never been employed.[5] Defendant maintained close relationships with his mother and siblings and had a three-year old daughter. The PSI describeed defendant as being a member of the Black Disciples gang and holding "the rank of 'glove.' " Defendant denied the statement from the PSI regarding any affiliation with the Black Disciples. The court denied defendant's motion to amend his PSI to reflect that denial but subsequently stated it did not consider the alleged gang membership in imposing sentence.

¶ 9    In aggravation, the State argued defendant had a juvenile adjudication from 2009 for aggravated battery to a school employee and was sentenced to the Illinois Youth Center. It also presented a victim impact statement from Arias, who described how the crime had negatively impacted him.

¶ 10    In mitigation, defense counsel noted that defendant grew up without a father and was a ward of the state in 2008. Defendant wanted to obtain his GED while in custody and provide for his three-year-old daughter. He lived with his mother and grandmother and was on good terms with his siblings. Counsel requested the minimum sentence.

---

[5] In a February 25, 2017, mitigation letter to the Office of the Cook County State's Attorney, defense counsel stated that defendant worked at a car wash prior to his arrest.

¶ 11    "Ms. Pelmer," codefendant Pelmer's mother, who was "like a common-law mother" to defendant, was present at defendant's sentencing and his prior court appearances even when codefendant Pelmer was not present.[6] She gave a statement to the court, expressing love and support for defendant. Defendant declined to make a statement in allocution. The court received various letters from defendant's friends and family members in mitigation and a certificate of completion from a bible study program. The court took a brief recess to review the materials.

¶ 12    In pronouncing sentence, the court described defendant's "attitude" in court from the first time he came before the bench as "bigger than all of this, that [he] could take care of all this, that this was going to go away and that nobody was going to show up, and [he'd] take care of it," which the court would not "just ignore or forget." It also noted that, "on the other side of that," it had seen Ms. Pelmer repeatedly attend defendant's court appearances and support him. The court mentioned letters written by defendant's cousins, which described him as "great" and having "great potential." The court noted the sentences defendant received while in custody, including the three years for aggravated battery to a peace officer.[7] Finally, the court noted that defendant expressed no remorse and gave no indication "that this isn't going to happen again."

¶ 13    The court sentenced defendant to concurrent sentences of 11 years' imprisonment for each count of aggravated kidnaping of Provinzano, Minahi, and Maldonado, and 4 years' imprisonment for kidnapping Arias. The sentences were to run consecutive to the 3-year sentence defendant received for the 2018 aggravated battery to a peace officer in case number 16 CR 09244. The court denied defendant's motion to reconsider sentence.

_____

[6] Ms. Pelmer's first name is not contained in the record.

[7] Defendant committed the aggravated battery in case number 16 CR 09244 while in custody for the instant case.

¶ 14    On appeal, defendant argues his 11-year sentence for aggravated kidnaping was excessive in light of his history of childhood abuse and neglect, minor criminal history, and family support.

¶ 15    We accord great deference to a trial court's sentence and will not reverse it absent an abuse of discretion. *People v. Butler*, 2013 IL App (1st) 120923, ¶ 30 (citing *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000)). "A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." *People v. Jackson,* 375 Ill. App. 3d 796, 800 (2007). In determining an appropriate sentence, the trial court considers such factors as "a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment." *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001). Absent some affirmative indication to the contrary, other than the sentence itself, we presume the trial court considered all mitigating evidence before it. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. Because the trial court, having observed the proceedings, is in the best position to weigh the relevant sentencing factors (*People v. Arze*, 2016 IL App (1st) 131959, ¶ 121), we do not substitute our judgment for that of the trial court simply because we would have balanced the appropriate sentencing factors differently (*People v. Alexander*, 239 Ill. 2d 205, 213 (2010)).

¶ 16    In this case, nothing in the record indicates that the trial court abused its discretion. See *People v. Burton,* 2015 IL App (1st) 131600, ¶ 38 (A defendant "must make an affirmative showing that the sentencing court did not consider the relevant factors."). Defendant was sentenced as a Class X offender to 11 years' imprisonment, well within the statutory range of 6 to 30 years. See 720 ILCS 5/10-2(a)(4), (b) (West 2016) (aggravated kidnaping by concealing identity is a Class X felony); see also 730 ILCS 5/5-4.5-25(a) (West 2016) (for Class X felonies, the sentence

range is 6 to 30 years' imprisonment). We therefore presume his sentence was proper, absent some indication otherwise. *Burton*, 2015 IL (1st) 131600, ¶ 36.

¶ 17 On the record before us, there is no such indication that the trial court abused its discretion. Although defendant claims the trial court failed to consider his history of childhood abuse and neglect, his minor criminal history, and the support of his friends and family, the record rebuts this claim. Defendant's PSI included a section about his criminal history and his childhood, which indicated defendant was raised by his mother and had a "good" childhood. It further revealed that defendant denied any history of abuse, "including physical, mental, sexual, alcohol, or substance abuse," but allegations of neglect or abuse against his mother resulted in his placement in group homes, after which his life was "chaotic and difficult." Additionally, the trial court heard arguments in aggravation and mitigation, reviewed defendant's PSI prior to sentencing, and took a recess to review mitigating materials, which included letters of support from defendant's friends and family members. See *People v. Babiarz*, 271 Ill. App. 3d 153, 164 (1995) ("Where the sentencing court examines a [PSI], it is presumed that the court considered the defendant's potential for rehabilitation."). Thus, the record demonstrates the trial court considered the relevant sentencing factors, including evidence in mitigation, in imposing sentence.

¶ 18 Moreover, nothing in the record demonstrates that the sentence is manifestly disproportionate to his offense. The evidence showed defendant, along with codefendants, forced their way into the apartment, threatened six people with what appeared to be guns, pistol-whipped three of them until they were bleeding, and took phones, jewelry, and cash. Given the seriousness of the offense and the trial court's consideration of the mitigating factors, we cannot say the 11-year sentence for aggravated kidnaping was excessive.

¶ 19    We are similarly unpersuaded by defendant's contention that the trial court failed to consider the financial impact of his incarceration on the State of Illinois. The court is required to consider the financial impact of defendant's incarceration on the State based on the financial impact statement filed by the Department of Corrections with the clerk of the court. 730 ILCS 5/5-4-1(a)(3) (West 2016). However, the court is not obligated to recite and assign a value to every factor that it considers (*People v. Perkins,* 408 Ill. App. 3d 752, 763 (2011)) and, absent evidence to the contrary, we presume the trial court considered the financial impact prior to sentencing defendant (*People v. Acevedo,* 275 Ill. App. 3d 420, 426 (1995)).

¶ 20    In this case, while the court did not explicitly refer to the financial impact of defendant's incarceration, the record shows that the court thoroughly considered the relevant sentencing factors. Further, defendant has not demonstrated that the court failed to consider the financial impact. In the absence of such evidence in the record, we presume the court considered financial impact prior to sentencing. Accordingly, we find the court did not abuse its discretion in sentencing defendant to 11 years' imprisonment.

¶ 21    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 22    Affirmed.