2021 IL App (1st) 172580-U

No. 1-17-2580

Order filed March 31, 2021
Modified upon Denial of Rehearing June 23, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 2171 |
| | ) | |
| MICHAEL SIMS, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Howse and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's 18-year sentence for burglary is affirmed where the record establishes that the trial court considered the circumstances of the case and all relevant factors.

¶ 2    Following a bench trial, defendant Michael Sims was convicted of burglary (720 ILCS 5/19-1(a) (West 2016)) and sentenced to 18 years' imprisonment. On appeal, defendant contends that the trial court abused its discretion by sentencing defendant to an excessive sentence in light

of the nature of the offense, defendant's age, and the nonviolent nature of his criminal record. We affirm.

¶ 3    Defendant was charged with one count of burglary, arising from events which took place on January 27, 2016. As defendant does not challenge the sufficiency of the evidence to sustain his conviction, we recount only those facts necessary to resolve the issue on appeal. The evidence at trial showed that, on January 27, 2016, Alejandro De La O-Mondragon was scheduled to clean the restaurant Pomp and Circumstance on North Wells Street in Chicago sometime prior to 2:00 p.m., before the restaurant opened to the public. When De La O-Mondragon arrived, he noticed the side door was not locked and assumed it was unlocked for a kitchen delivery. De La O-Mondragon began to clean the restaurant when he heard bottles clinking in the "liquor room" in the basement, near where the kitchen was located. He called out "who's there?" twice but got no response. When he heard the sound a second time, he was scared and called the police.

¶ 4    As De La O-Mondragon stood watching the door at the bottom of the basement stairs, he saw a man, whom he identified in court as defendant, exit the basement and attempt to come up the stairs. Defendant was holding a "Santa Claus bag" over his shoulder with bottles of liquor inside. De La O-Mondragon told defendant to leave the liquor and go, but defendant told him to "get out my way or I'm going to f*** you up." De La O-Mondragon exited the building through the side door and intercepted defendant outside on the sidewalk, where he sprayed defendant in the face with pepper spray. De La O-Mondragon and defendant fought over the bag and, after De La O-Mondragon obtained control over the bag, defendant fled into a nearby building. The police arrived shortly thereafter and found defendant hiding in a closet in the building, where they arrested him. De La O-Mondragon identified defendant at the scene, and defendant told police he had done

something "dumb," meant no harm, and "was trying to hustle." The bag defendant attempted to take contained ten 1.75 liter bottles of Belvedere Vodka and two bottles of cognac, valued at $2,104.25.

¶ 5    The trial court found defendant guilty of burglary. It denied defendant's motion for a new trial and *pro se* motion for a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 6    Prior to sentencing, defendant pled guilty in another pending burglary case, case number 16 CR 5339, and was sentenced to six years' imprisonment, which would run concurrently to the sentence in this case. The factual basis for the plea showed that on December 19, 2015, defendant went into a closed business, the Hubbard Inn, encountered the manager, struck him, and fled.

¶ 7    At sentencing in this case, defendant's presentence investigation report (PSI) indicated that defendant had a total of sixteen prior convictions, including convictions for burglary (1977, 1978, 1986, 1989 [2 cases], 1995, 1998, and 2008) and theft (1975, 1976, 1977, 1980, 1988, and 1998). Including his guilty plea in case number 16 CR 5339, thirteen of his prior convictions were for felony offenses, and nine of those convictions were for burglary offenses. The sentences for his prior convictions ranged from 1 year probation (theft) to 20 years imprisonment (burglary).[1]

¶ 8    The PSI also indicated that defendant was born in 1957, suffered from arthritis and high cholesterol, and described his health as "poor." Defendant stated he had a "beautiful" relationship with his mother, suffered no abuse or neglect, and had a "rough" childhood due to being raised in the Cabrini Green Housing Projects. Defendant reported he drank alcohol "every day, all day,"

---

[1] In addition to the cases listed above, defendant's PSI shows a 1983 burglary conviction, which the court struck pursuant to the State's request as the State had no information on the arrest. The court also did not consider in aggravation a 1976 theft and attempt burglary conviction where the State had disparate information regarding defendant's sentencing.

smoked marijuana every day, and began using both at age 12. He was under the influence of alcohol during the offense and drinks "everything" when consuming alcohol. Defendant reported he began using heroin six months prior to his arrest. He stated he had never been treated for his alcohol or drug use, had never seen a mental health professional, and felt no need to speak to one.

¶ 9    In aggravation, the State argued that in addition to defendant's lengthy criminal history, which included 10 prior burglary convictions, defendant threatened De La O-Mondragon with violence during the commission of the offense. Further, defendant's last prior conviction, where he was sentenced to 15 years' imprisonment for burglary, was not a deterrent to his committing two additional burglaries. He was on parole from that conviction when he committed the offense at issue here and had recently pleaded guilty to another burglary. The State requested a "significant term of years" for defendant, citing his inability to comport with the laws and "inability to not commit burglary offenses when released to the public."

¶ 10    In mitigation, defense counsel argued the case was "about ten bottles of vodka" taken from a restaurant "by an alcoholic and drug addict." Counsel argued that defendant would not have committed the offense had he not been addicted to drugs and alcohol and took the liquor for his own use. Counsel pointed out defendant grew up in a negative environment, had stayed away from gangs and violence, and had no violent crimes in his background. And this burglary, counsel said, was a nonviolent offense. Further, at the time of sentencing, defendant was a 60-year-old man suffering from deteriorating health, namely arthritis and high cholesterol, did not pose a threat of violence to the community, and needed treatment rather than another lengthy prison term. Counsel argued defendant's case was similar to *People v. Busse*, 2016 IL App (1st) 142941, where this court reduced the defendant's 12-year sentence to the 6-year minimum, finding 12 years was

grossly disproportionate to the burglary offense despite the defendant's extensive prior criminal history. Defense counsel requested the minimum sentence of six years' imprisonment and that defendant be mandated to treatment so that he could receive help for his addictions.

¶ 11    In allocution, defendant informed the court that he had been suicidal in the past and had attempted to seek help during previous prison terms, but nobody would help him. Defendant stated that he knew he had problems but never had anyone who was willing to help. Defendant asked the court to help him.

¶ 12    The court sentenced defendant to 18 years' imprisonment as a Class X offender. The court discussed at length the *Busse* opinion and distinguished it on the basis of the law and of the facts of defendant's case, noting *Busse* involved the defendant's theft of $44 worth of quarters from a vending machine in an unoccupied building, whereas defendant stole over $2,000 worth of liquor from a restaurant. The court acknowledged defendant's argument that his crime was nonviolent but stated that mandatory Class X sentencing required a defendant to be sentenced as a Class X offender on his third burglary conviction, with a sentencing range of 6 to 30 years' imprisonment, and nothing in the statute specified that a defendant should get the minimum if it he did not commit a violent crime. The court discussed the facts of the case, where defendant committed a burglary from a restaurant and was involved in a struggle with De La O-Mondragon and eventual police chase, and reiterated it found this "certainly a far different case than jimmying some change out of a vending machine" as in *Busse*.

¶ 13    The court reviewed the factors in aggravation and mitigation, specifically addressing many of them. It recited each of defendant's prior convictions, finding defendant had "an astounding background of Class 2 felony offenses and literally no break between them," and despite two "big

sentences in a row" in 1998 (20 years) and 2008 (15 years), defendant was undeterred. The court recognized defendant's argument that the lengthy sentences had not helped defendant so why "do it again," but found that, "at some point in time," "you have to consider the defendant's behavior and its effect on other individuals." The court sentenced him to 18 years' imprisonment, finding defendant "has made clear he is not going to cease this type of activity. It's an overwhelming history of unremitting criminal behavior of burglary which the legislature has deemed a Class 2 felony."

¶ 14 On appeal, defendant argues the sentence he received was excessive given the nature of the offense, his age, and the nonviolent nature of his criminal background. Defendant requests that we reduce his sentence to the six-year minimum or to a different term of years that we feel is appropriate.

¶ 15 A sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I § 11*; People v. Neasom*, 2017 IL App (1st) 143875, ¶ 48. Under Illinois Supreme Court Rule 615(b)(4), a reviewing court may reduce the sentence imposed on defendant by the trial court. "That power, however, should be exercised 'cautiously and sparingly.' " *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) (quoting *People v. O'Neal*, 125 Ill. 2d 291, 300 (1988)).

¶ 16 Accordingly, a trial court's sentencing decision is reviewed under the abuse of discretion standard of review. *Id.* A reviewing court will find the trial court abused its discretion where the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). A trial court has broad discretion in imposing a sentence, and its sentencing decisions are

afforded great deference, because the trial judge "observed the defendant and the proceedings" and is in a better position to weigh factors such as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Id*. The reviewing court " 'must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Id.* at 213 (quoting *Stacey*, 193 Ill. 2d at 209). Nevertheless, we must interpret sentencing laws "in accord with common sense and reason" and not merely rubber stamp the trial court's judgment, so as to "avoid an absurd or unduly harsh sentence." *People v. Allen*, 2017 IL App (1st) 151540, ¶ 1.

¶ 17    A sentence that falls within the statutory range is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In this case, defendant was convicted of Class 2 burglary (720 ILCS 5/19-1(a), (b) (West 2016)) and, based upon his many prior felony convictions, sentenced as a Class X offender, with a sentencing range of 6-30 years' imprisonment. 730 ILCS 5/5-4.5-95(b) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016). Defendant's 18-year sentence falls within these statutory guidelines and is, therefore, presumed to be proper. *Knox*, 2014 IL App. (1st) 120349, ¶ 46.

¶ 18    Although defendant's sentence falls within the statutory range, he argues the trial court abused its discretion in sentencing him to three times the minimum term, citing the nature of the offense, his advanced age, and nonviolent criminal background. In particular, defendant contends the nature of the crime—attempting to steal 12 bottles of alcohol from an unoccupied, unlocked restaurant—is grossly disproportionate to the sentence imposed. Defendant additionally questions the utility of "simply locking [him] away" where the root cause of his convictions was his untreated drug and alcohol addictions. To that point, defendant argues the court failed to consider the

financial burden of imposing a lengthy sentence for an offender like himself; he claims that it would better serve the interests of justice to address his underlying substance-abuse issues rather than imprison him for a lengthy period of time.

¶ 19    The trial court is presumed to consider "all relevant factors and any mitigation evidence presented" *(People v. Jackson*, 2014 IL App (1st) 123258, ¶ 48), but has no obligation to recite and assign a value to each factor *(People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011)). Rather, when, as here, it is essentially argued that the court failed to take factors into consideration, the defendant "must make an affirmative showing that the sentencing court did not consider relevant factors." *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 20    Defendant has made no such showing. The record shows the trial court clearly considered all relevant factors in mitigation and aggravation. It reviewed defendant's PSI, which reflected not only his criminal history but his family and addiction history, and discussed the trial evidence in detail, including the alleged "nonviolent" nature of the offense. The court reviewed the mitigation and aggravation factors, specifically addressing many of them, and heard arguments in mitigation and aggravation, including the same arguments defendant now argues on appeal regarding defendant's age, health, nature of the offense, and nonviolent criminal background. Defendant has not made any affirmative showing that the trial court did not properly consider these factors in sentencing him. Defendant's argument is merely a request to this court to reweigh the factors in aggravation and mitigation and substitute its judgment for that of the trial court. This we will not do. *Alexander*, 239 Ill. 2d at 213 (where the sentencing court adequately considered the appropriate factors, "the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed those factors differently").

¶ 21    Defendant emphasizes the fact that the offense for which he was convicted—burglary of 12 bottles of liquor—is disproportionate to the sentence he received. In support of his argument, defendant cites to *Allen*, 2017 IL App (1st) 151540, and *People v. Busse*, 2016 IL App (1st) 142941, in which a defendant's sentence was reduced as being disproportionate to the nature of the offense. In his opening brief, defendant writes that "[t]he facts of this case cannot be distinguished in any meaningful way from these controlling precedents." But every case involving a sentencing review involves the unique aspects of that case, so we would not characterize *Allen* and *Busse* as "controlling" in the sense that we must reach the same outcome, when the facts and circumstances here are different. Indeed, "our supreme court has rejected an approach that compares sentences between defendants in unrelated cases." *People v. Brown*, 2017 IL App (1st) 142877, ¶ 65; see *People v. Fern*, 189 Ill. 2d 48, 56 (1999) ("The fact that a lesser sentence was imposed in another case has no bearing on whether the sentence in the case at hand is excessive *on the facts of that case*." (Emphasis in original.))

¶ 22    Defendant also argues the trial court failed to consider the financial costs of incarcerating defendant for 18 years in the Illinois Department of Corrections. See 730 ILCS 5/5-4-1(a)(3) (West 2016). Despite defendant's contention, the record contains no evidence that the trial court failed to consider the financial impact of defendant's incarceration. Accordingly, in the absence of evidence to the contrary, we will presume the trial court considered this factor as well before sentencing defendant. See *People v. Acevedo*, 275 Ill. App. 3d 420, 426 (1995).

¶ 23    In his reply brief, defendant argues that, given the state of Illinois correctional institutions following the COVID-19 pandemic, as an older inmate, he is at "extreme risk for infection and serious complications, including death." We are not unsympathetic to the plight of all prisoners

during the COVID-19 pandemic, but that fact alone does not separate defendant from other incarcerated prisoners. True, he is older, and we generally understand elderly prisoners to be at greater risk in the pandemic, but again, we do not find this reason alone to be sufficient to alter the sentence for the reasons we have given above.

¶ 24   We sympathize with defendant and agree that the sentence was significant. But as the trial court noted, two previous significant sentences had not deterred defendant's criminal conduct. We cannot say that the sentence imposed, under the circumstances, was manifestly disproportionate. See *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 13 (criminal history alone may warrant a sentence substantially above minimum). We thus affirm the judgment.

¶ 25   Affirmed.