2022 IL App (1st) 210808

No. 1-21-0808

Opinion filed July 20, 2022

Third Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 1000201 |
| | ) | |
| SANTANA GRAYER, | ) | Honorable |
| | ) | Vincent Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justice McBride concurred in the judgment and opinion.
Presiding Justice Gordon dissented, with opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Santana Grayer was found guilty of attempted vehicular

hijacking, then sentenced to five years' imprisonment. The evidence introduced at trial showed

that defendant was the passenger in Lyft rideshare vehicle driven by the victim, Arnold Ong.

Defendant was intoxicated and believed that Ong was driving in the wrong direction. From the

back seat of the vehicle, defendant grabbed Ong's shirt sleeve and threatened to kill him. Ong

parked the vehicle at a gas station, took the keys to the vehicle, and called police.

¶ 2     On appeal, defendant contends that the court erred in finding him guilty of attempted vehicular hijacking where the State failed to present sufficient evidence to show that he had the intent to commit vehicular hijacking or that his actions constituted a substantial step toward the commission of that offense. Defendant maintains that his actions demonstrate that he was simply a highly intoxicated person who wanted to go home rather than represent a serious attempt to hijack Ong's vehicle. In the alternative, defendant contends that his sentence is excessive in light of the nonserious nature of the offense where no one was hurt and in light of the substantial mitigating evidence presented. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                I. BACKGROUND

¶ 4                              A. Trial Proceedings

¶ 5     At trial, Ong testified that, in September 2020, he was driving for Lyft when he received a pickup request from a Lyft account-holder named Phyllis. When he arrived at the designated location, he saw a large group of people. Ong spoke to Phyllis who told him that defendant would be the passenger for the requested ride. Ong could tell that defendant was intoxicated. Defendant got into the back seat of Ong's vehicle, and Ong started to drive toward the designated location. Several minutes into the drive, defendant told Ong that he was driving the wrong direction. Ong testified that he was following the GPS directions in the Lyft application. The destination for the ride was inputted when the ride was requested. Ong did not know who put the destination information into the Lyft application. Ong told defendant that he was going in the right direction because he was following the GPS in the Lyft application.

¶ 6     Defendant then became angry and told Ong that he wanted to drive the vehicle himself. Ong told defendant that he could not drive the vehicle. Defendant asked to drive the car himself "multiple times" in a loud voice. Defendant then "got mad," grabbed Ong's shirt at his right

shoulder, and threatened to kill him. While grabbing Ong's shoulder with his left hand, defendant reached his right hand toward his waist. Ong thought defendant was trying to "grab something" from his waist. Ong believed defendant was attempting to get a "deadly weapon" from his waistband, such as a knife or a gun. Defendant repeatedly told Ong that he was going to kill him while holding onto his shirt sleeve.

¶ 7     Ong testified that he was scared and realized his "life was at stake." Ong drove the vehicle to a gas station. Ong got out of the vehicle and took his car keys and his cellphone with him. Defendant also got out of the vehicle and started "chasing" Ong around the vehicle. Ong acknowledged that defendant was moving slowly while following him around the vehicle, but Ong testified that he believed defendant could not run fast because he was intoxicated. Ong did not lock his vehicle after he got out because his keyless entry remote was not working. Ong testified that he could have used his keys to lock the vehicle, but he was in a hurry and did not have time to do so.

¶ 8     Ong was able to get away from defendant and went into the convenience store at the gas station. The people in the convenience store called the police for Ong. Ong did not tell the people in the convenience store that he believed defendant had a gun but did tell them that defendant threatened to kill him. While waiting for police, Ong wanted to check on his vehicle so he took a step outside of the convenience store to look at it. He saw defendant standing near the vehicle holding Ong's house keys, which Ong had left in the vehicle's cup holder. Defendant was waiving the keys toward Ong. Ong saw defendant get into the driver's seat of the vehicle with the house keys.

¶ 9     The State then submitted into evidence a surveillance video of the incident from the gas station's security system. The surveillance video shows Ong driving the vehicle into the gas station

near a pump. Ong then exits the vehicle, and defendant exits too. Ong walks toward the front of the vehicle but turns around when defendant also begins walking toward the front of the vehicle. Ong briefly opens the front, driver's side door, but closes it as defendant approaches. Ong then starts walking around the back of the vehicle while defendant follows. Ong then circles the vehicle again while defendant follows.

¶ 10    When defendant reaches the front driver's side, he opens the door and looks at Ong over the top of the vehicle. Defendant remains standing near the open door while Ong goes inside the convenience store. After Ong enters the store, defendant walks around the vehicle and leans against the rear passenger side door. Ong later comes out of the convenience store and stands near the entrance next to two men, one of whom is speaking on a phone. Ong and the two men then go back inside the convenience store when defendant approaches them.

¶ 11    Another segment of the video shows defendant standing near the open, front driver's side door holding Ong's house keys. Defendant is shaking the keys toward the convenience store.

¶ 12    Defendant then gets inside the vehicle with Ong's house keys in his hand. Defendant can be seen reaching toward the ignition of the vehicle with the keys in his hand and making a turning motion as though attempting to start the vehicle. Defendant repeats this motion several times. Defendant then reclines the driver's seat and lies back until police arrive and force him to exit the vehicle.

¶ 13    The police arrived on the scene and took defendant into custody. Ong did not tell the responding officers that he believed defendant had a gun but did tell them that defendant threatened to kill him.

¶ 14    Sergeant Nicholas Cortesi testified that he responded to the call from the gas station. When he arrived, he saw defendant sitting in the driver's seat of Ong's vehicle. Sergeant Cortesi

persuaded defendant to exit the vehicle and then placed him under arrest. Sergeant Cortesi testified that Ong did not tell him that he believed defendant had a gun. The parties stipulated that the footage from Sergeant Cortesi's body-worn camera would show that Ong did not make any statements to the officers that he thought defendant had a weapon on his waistband.

¶ 15    The State rested, and the court denied defendant's motion for a directed verdict. Defense counsel indicated that defendant did not wish to testify. The court asked defendant if that was correct and defendant responded: "Yeah, I guess. I can't remember the case." Defendant subsequently rested without presenting any evidence.

¶ 16    Following closing argument, the court reviewed the evidence presented. The court noted that there was evidence of "some intoxication" but that the evidence showed that defendant was aware of his environment, knew different directions, and "knew to his way of thinking" that Ong was driving in the wrong direction. The court therefore found that defendant was "not intoxicated as a legal defense." The court found credible Ong's testimony that defendant grabbed Ong's shirt sleeve and that defendant reached toward his waistband with his other hand. The court observed that the surveillance video depicted a "slow motion" chase around the vehicle where defendant actually changed directions in his pursuit of Ong. The court found that the video also showed that once defendant sat in the driver's seat of the vehicle with Ong's house keys, he repeatedly made a motion toward "where the ignition would be as if to start the car." The court therefore found defendant guilty of attempted vehicular hijacking.

¶ 17    Following the court's ruling, defendant filed motions to set aside the finding of guilty and for a new trial, which the trial court denied after a hearing.

¶ 18                                    B. Postjudgment Motions

¶ 19    Defendant subsequently filed a *pro se* "motion for appointment of new counsel based upon ineffective assistance of trial counsel or in the alternative grant a new trial." In the motion, defendant alleged that he reviewed the arresting officer's body-worn camera recording with his attorney. Defendant contended that this recording contained "exculpatory or exonerating evidence." This evidence included Ong stating that defendant did not hit him and that Ong did not want to press criminal charges against defendant. Defendant alleged that the video showed the arresting officer coerce and intimidate Ong into pressing charges. Defendant alleged that defense counsel was aware of this evidence but failed to present it at trial.

¶ 20    Defendant also alleged misconduct by the State, contending that the State used perjured testimony and allowed Ong to present false testimony at trial. This contention also concerned statements from the arresting officer's body-worn camera recording, which defendant asserted showed that the officers pressured Ong into pressing charges against defendant. Defendant alleged that the State improperly covered up this evidence.

¶ 21    The State filed a response to defendant's *pro se* motion, maintaining that it did not cover up any evidence as defendant suggested and did not present false or misleading testimony. The State also attached to its motion a transcript from a portion of the body-worn camera recording. In the transcript, Ong tells the officers that he was giving defendant a ride when defendant told him to take him home. Ong told defendant that he was taking him home, but defendant said that he was not. Defendant asked to take the wheel, but Ong told him he could not. Defendant grabbed Ong's shirt sleeve and threatened to kill him. The officers asked Ong if defendant had a weapon, but Ong said he was not sure. Ong told the officers that defendant grabbed him but did not put him in a "head lock."

¶ 22    When the officers asked Ong if he wanted to press charges, Ong said that he did not. The officers asked him why he did not want to press charges, and Ong replied that he just wanted to continue working. The officers told Ong that this was a violent crime and asked if he believed this was the last time defendant would do something like this. The officer told Ong, "Okay sir, it's like this; if you don't wanna do anything then we just let him go. And him—he can do it again. And he can do it again to you." The officer told Ong that it was a "priority" to get justice for Ong and the community. The officer told Ong that if he had not sought help in the gas station and if the officers had not arrived, defendant could have hurt him and stolen his vehicle. Ong then agreed to cooperate with the police and "press charges."

¶ 23    In denying defendant's motion with regard to the allegations against the State, the court found that the recoding from the body-worn camera spoke for itself. The court found that Ong was initially reluctant to press charges and reluctant to come to court, but he voluntarily complied with the subpoena the State sent him and voluntarily testified at trial. The court found there was no evidence that the State forced him to testify.

¶ 24    The court then addressed defendant's allegations against defense counsel in a *Krankel* hearing. See *People v. Krankel*, 102 Ill. 2d 181 (1984). At the hearing, defense counsel stated that she watched the body-worn camera recordings with defendant on more than one occasion before trial. She explained to him that merely because Ong was initially hesitant to press charges did not stop defendant from being charged because the State ultimately decides whether to bring charges. Defense counsel explained that she developed a trial strategy with defendant and they discussed that strategy together. Defense counsel stated that she considered using the body-worn camera footage in impeachment but did not need to do so when the State stipulated that Ong never told the responding officers that he thought defendant had a weapon on his waistband. Defense counsel

stated that part of why she did not seek to introduce the video was because it depicted "a man who just had his car taken from him, who felt that he needed to go to a gas station to protect himself."

¶ 25     The court asked defendant if he had anything further to say in support of his ineffective assistance claim. Defendant began to explain that he was too drunk and did not even remember getting in Ong's vehicle, but the court cut him off. The court found that nothing defendant was saying was relevant to his claim of ineffective assistance. The court then found that there was no basis for his allegations.

¶ 26                                  C. Sentencing

¶ 27     The court proceeded to sentencing. The State presented defendant's background, which included a 2002 aggravated battery with great bodily harm for which defendant was sentenced to eight years' imprisonment. Defendant also had a 1999 conviction for possession of a controlled substance and 1997 conviction for aggravated battery to a police officer. The assistant state's attorney (ASA) recounted the facts of the case and noted that defendant represented that he was too drunk to remember the incident. The ASA stated that this appeared to show contrition and the State was prepared to recommend the lowest sentence possible. "However, since then, the defendant has done nothing but blame everyone except himself. He blames the victim. He blames the State. He blames his own attorney." The ASA stated that defendant had not shown contrition or remorse and had not shown that he was willing to comport himself with the rules and expectations of society. The ASA therefore asked for a sentence in the "top range."

¶ 28     In mitigation, defense counsel represented that defendant was a "family man." Defendant had lived with his brother and his own children "at different points in time." Defense counsel detailed defendant's relationship with his four children and stated that he also had a good relationship with the mothers of his children. Counsel represented that defendant had worked as a

carpenter for 20 years. Defense counsel stated that defendant was willing to participate in an alcohol treatment program and argued that probation was appropriate in this case.

¶ 29 In allocution, defendant stated that he wished he could apologize to Ong for the situation that he caused that day.

¶ 30 In sentencing defendant, the court stated that it was considering a much higher sentence before defendant made his statement in allocution. The court was impressed that defendant accepted responsibility and that he wanted to apologize to Ong. The court initially found that an appropriate sentence in this case was 5½ years' imprisonment. However, after explaining to defendant his right to an appeal, the court decided to reduce defendant's sentence to five years' imprisonment because of his courtesy and respect in front of the court. The court subsequently denied defendant's motion to reconsider the sentence. This appeal follows.

¶ 31                                    II. ANALYSIS

¶ 32 On appeal, defendant contends that the court erred in finding him guilty of attempted vehicular hijacking where the evidence presented failed to establish that he had the requisite intent to commit vehicular hijacking or that he took a substantial step toward the commission of that offense. Defendant asserts that the evidence shows that he did not intend to hijack Ong's vehicle, but was merely intoxicated and wanted to go home. In the alternative, defendant contends that his sentence is excessive in light of the nonserious nature of the offense where no one was harmed, and in light of the mitigating evidence presented.

¶ 33                          A. Sufficiency of the Evidence

¶ 34 We will first address defendant's contention that the evidence presented was insufficient to prove him guilty of the offense of attempted vehicular hijacking beyond a reasonable doubt. Where a defendant challenges the sufficiency of the evidence to sustain his conviction, the

reviewing court must consider whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). This standard recognizes the responsibility of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony, to resolve any conflicts and inconsistencies in the evidence, and to draw reasonable inferences therefrom. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). A reviewing court must allow all reasonable inferences from the record in favor of the State and will not overturn the decision of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011); *People v. Smith*, 185 Ill. 2d 532, 542 (1999).

¶ 35 Here, the trial court found defendant guilty of attempted vehicular hijacking. A defendant commits the offense of vehicular hijacking where he "knowingly takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-3(a) (West 2020). A defendant commits the offense of attempt when "with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense." *Id.* § 8-4(a).

¶ 36                                              1. *Specific Intent*

¶ 37 Defendant first contends that the State failed to prove him guilty beyond a reasonable doubt because the evidence presented does not show that he had the specific intent to commit vehicular hijacking. Defendant maintains that his actions of grabbing Ong's shirt sleeve were not indicative of attempt and his threats to kill Ong were "mere drunken hyperbole." Defendant asserts that the evidence presented did not show that defendant actually intended to take Ong's vehicle but rather portrayed an intoxicated individual who wanted to go home. Defendant acknowledges that

voluntary intoxication is not an affirmative defense but contends that it is relevant to specific intent offenses such as attempt.

¶ 38    Defendant essentially contends that he was so intoxicated that he was unable to form the specific intent necessary to commit the offense of attempted vehicular hijacking. As defendant points out, this court has found that a defendant's voluntary intoxication may be relevant where " 'voluntary intoxication is so extreme as to suspend entirely the power of reasoning,' [such that] a defendant is incapable of forming a specific intent or malice." *People v. Slabon*, 2018 IL App (1st) 150149, ¶ 33 (quoting *People v. Cunningham*, 123 Ill. App. 2d 190, 209 (1970)). As such, a person's state of involuntary intoxication may be relevant to the commission of specific intent crimes, which " 'require proof of an additional special mental element.' " *Id.* (quoting *People v. Robinson*, 379 Ill. App. 3d 679, 684 (2008)).

¶ 39    Before addressing the merits of defendant's contention, we must first examine this court's holding in *Slabon*, which defendant relies on in support of his contention that his state of voluntary intoxication was relevant to his intent in this case. In finding that a defendant's voluntary intoxication may be relevant in the commission of specific intent crimes, the *Slabon* court relied on this court's decision in *Cunningham*, 123 Ill. App. 2d at 208-09. Significantly, *Cunningham* was decided in 1970. At the time *Cunningham* was decided, the intoxicated or drugged condition statute of the Criminal Code of 1961 provided that an intoxicated or drugged person was

> "criminally responsible for conduct unless such condition either: (a) Negatives the existence of a mental state which is an element of the offense; or (b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1963, ch. 38, ¶ 6-3.

See *People v. Rutigliano*, 2020 IL App (1st) 171729, ¶ 69 (reviewing the legislative history of the Illinois intoxicated or drugged condition statute).

The statute was amended in 1988 to provide that an intoxicated person was:

"criminally responsible for conduct unless such condition either:

(a) Is so extreme as to suspend the power of reason and render him incapable of forming a specific intent which is an element of the offense; or

(b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 720 ILCS 5/6-3 (West 2000).

The statute was amended again in 2002 to its current form to provide that an intoxicated or drugged person "is criminally responsible for conduct unless such condition is involuntarily produced *and* deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Emphasis added.) 720 ILCS 5/6-3 (West 2020). As such, since the 2002 amendment, Illinois courts have recognized that "voluntary intoxication cannot be asserted as an affirmative defense to negate the element of intent." *People v. Himber*, 2020 IL App (1st) 162182, ¶ 55 (citing *People v. Jackson*, 362 Ill. App. 3d 1196, 1201 (2006) ("Effective January 1, 2002, Illinois no longer recognized voluntary intoxication as an excuse for criminal conduct."), and *People v. Rodgers*, 335 Ill. App. 3d 429, 433 n.1 (2002) ("Illinois no longer recognizes voluntary intoxication as an excuse for criminal conduct")).

¶ 40 Defendant maintains that *Slabon* correctly states the law on voluntary intoxication, explaining that although it is no longer an affirmative defense, it may still be "relevant in a criminal proceeding." *Slabon*, 2018 IL App (1st) 150149, ¶ 33. Defendant contends that this interpretation is supported by the legislative history of section 6-3, which shows that the legislature intended

only to remove voluntary intoxication as a statutory affirmative defense but did not intend to preclude a defendant from introducing evidence of his intoxication to negate the appropriate mental state. Defendant contends, consistent with *Slabon*, evidence of a defendant's voluntary intoxication may be relevant " 'where voluntary intoxication is so extreme as to suspend entirely the power of reasoning,' [such that] a defendant is incapable of forming a specific intent or malice." *Id.* (quoting *Cunningham*, 123 Ill. App. 2d at 209).

¶ 41 Defendant maintains that he is not attempting to use his state of voluntary intoxication as an affirmative defense but contends that his intoxication may be relevant in the commission of specific intent crimes, such as the attempted vehicular hijacking offense in the case at bar. As noted, however, the precedent defendant relies on in support of that contention is this court's ruling in *Slabon*, which in turn relied on this court's ruling in *Cunningham*. *Cunningham* was decided in 1970, before the 1988 and 2002 amendments to the Illinois intoxicated or drugged condition statute. Indeed, the cited portion of *Cunningham* that *Slabon* relies on explicitly states: "Voluntary intoxication is an affirmative defense if it negatives the existence of a mental state which is an element of the offense." *Cunningham*, 123 Ill. App. 2d at 208-09 (citing Ill. Rev. Stat. 1963, ch. 38, ¶ 6-3(a)). This is clearly at contrast with the law as it stands today following the two amendments to section 6-3 after *Cunningham* was decided. The *Slabon* court's reliance on *Cunningham* for the proposition that a defendant's voluntary intoxication may be relevant where it is so extreme as to "suspend entirely the power of reasoning," such that a defendant is incapable of forming a specific intent or malice, is therefore misplaced. Accordingly, we find that *Slabon* misstates the law on voluntary intoxication as it stands today. Simply put, section 6-3 now provides that voluntary intoxication is not an excuse for criminal conduct. *Jackson*, 362 Ill. App. 3d at 1201.

¶ 42    Nonetheless, we find that the evidence presented did not demonstrate that defendant's intoxication was "so extreme" as to suspend entirely his power of reasoning. Although Ong testified that he believed defendant was intoxicated, as the trial court recognized, defendant's conduct demonstrated that he was not so intoxicated that he was incapable of forming specific intent. For instance, defendant appeared to have a grasp on directions, knowing which direction Ong was driving and believing that it was not in the direction of his home. Defendant's intent can also be seen on the video surveillance recording where defendant, perhaps believing he was in the possession of Ong's car keys, appeared to shake Ong's house keys toward him in a taunting manner. Defendant then got into the driver's seat and appeared to attempt to put Ong's house keys into the vehicle's ignition and start the vehicle. The surveillance video also shows that while defendant was chasing Ong around his vehicle, defendant appeared to speed up in his pursuit and never took his eyes off of Ong. These actions do not suggest that defendant's intoxication was so extreme such that his ability to reason was suspended such that he was unable to form specific intent. Accordingly, we cannot say that the evidence presented was insufficient to support the trial court's determination that defendant had the specific intent to commit the offense of attempted vehicular hijacking.

¶ 43                                                2. *Substantial Step*

¶ 44    Defendant next contends that the State failed to prove him guilty beyond a reasonable doubt because the evidence presented does not show that he took a substantial step toward the commission of vehicular hijacking. What constitutes a substantial step is determined by the unique facts and circumstances of each case. *People v. Perkins*, 408 Ill. App. 3d 752, 758 (2011). A substantial step should put the accused in a "dangerous proximity to success." (Internal quotation marks omitted.) *People v. Hawkins*, 311 Ill. App. 3d 418, 423-24 (2000). Illinois courts have relied

on the Model Penal Code for guidance in determining whether a defendant has taken a substantial step toward commission of a crime. See *People v. Terrell*, 99 Ill. 2d 427, 435-36 (1984). Under the Model Penal Code, an attempt has occurred when a person, acting with the required intent, " 'purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.' " *Perkins*, 408 Ill. App. 3d at 758 (quoting Model Penal Code § 5.01(1)(c) (1985)).

¶ 45 Defendant asserts that his act of pulling on Ong's shirt sleeve and threatening to kill him was not a substantial step toward the commission of vehicular hijacking because it did not put him in "dangerous proximity" to successfully hijacking the vehicle. However, under the standards of the Model Penal Code, defendant's actions of telling Ong he wanted to drive the vehicle, grabbing Ong's shirt, and threatening to kill him were acts purposely done in a course of conduct planned to culminate in his commission of a crime.

¶ 46 Defendant contends that his actions did not demonstrate an attempt to take control of the vehicle. This contention is flatly contradicted by the evidence presented. Although defendant was not able to take control of the vehicle at the time he grabbed Ong's shirt sleeve and threatened to kill him, he did attempt to take control of the vehicle when he had the opportunity to do so. After Ong left the vehicle and went inside the convenience store at the gas station, defendant entered the driver's seat of the vehicle and attempted to use Ong's house keys to start the vehicle. Defendant contests this characterization of his actions, asserting that the video shows him reaching toward the center console of the vehicle but not necessarily toward the vehicle's ignition. The trial court found, however, that the video showed that once defendant sat in the driver's seat of the vehicle with Ong's house keys, he repeatedly made a motion toward "where the ignition would be as if to

start the car." As noted, we defer to the trial court to resolve any conflicts and inconsistencies in the evidence and to draw reasonable inferences therefrom. *Sutherland*, 223 Ill. 2d at 242. We agree with the court's characterization of defendant's conduct where the video unmistakably shows him attempting to start Ong's vehicle with the house keys several times. The video clearly shows the keys in defendant's hand and his forearm and wrist can be seen making a twisting gesture consistent with attempting to start a vehicle.[1]

¶ 47    Moreover, if it was not defendant's intention to take control of the vehicle, defendant could simply have left the scene when Ong parked the vehicle at a gas station or he could have stayed sitting in the back seat. Instead, defendant decided to chase Ong around the vehicle, take possession of Ong's house keys, get into the driver's seat of the vehicle, and seemingly attempt to start the vehicle with Ong's house keys. We therefore find that the evidence presented was sufficient to prove beyond a reasonable doubt that defendant had the requisite intent to commit the offense of vehicular hijacking and took a substantial step toward the commission of that offense.

¶ 48                                B. Excessive Sentence

¶ 49    Defendant next contends that his sentence is excessive in light of the nonserious nature of the offense and the mitigating evidence presented. Defendant contends that this was not the "typical" attempted vehicular hijacking case in that it was not premeditated or planned and no one was injured. Defendant contends that there was also minimal evidence of force where defendant only pulled on Ong's shirt sleeve.

---

[1]We also observe that, although this evidence was not introduced at trial, in the portion of the body-worn camera recording introduced by the State, when the officers were asking Ong if he wanted to press charges, a bystander said to Ong, "He was trying to take your car." Ong replied: "Yeah, he was try—I saw it—I saw (inaudible). He was trying to—to start it." Ong then made a gesture as though turning keys in a vehicle ignition.

¶ 50    A reviewing court will not alter a defendant's sentence absent an abuse of discretion by the trial court. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court abuses its discretion in determining a sentence where the sentence is greatly at variance with the spirit and purpose of the law or if it is manifestly disproportionate to the nature of the offense. *Id.* The trial court is afforded such deference because it is in a better position than the reviewing court to weigh the relevant sentencing factors such as " 'defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *People v. Stevens*, 324 Ill. App. 3d 1084, 1093-94 (2001) (quoting *People v. Streit*, 142 Ill. 2d 13, 19 (1991)). In the absence of evidence to the contrary, we presume that the sentencing court considered all mitigating evidence presented. *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51.

¶ 51    Here, defendant was found guilty of attempted vehicular hijacking. The applicable sentencing range for that offense is three to seven years imprisonment. 730 ILCS 5/5-4.5-35(a) (West 2020); see also 720 ILCS 5/18-3(b) (West 2020); 720 ILCS 5/8-4(c)(3) (West 2020). Here, the court sentenced defendant to a five-year term of imprisonment. The sentence imposed therefore fell within the statutorily prescribed range and is presumably valid. *People v. Wilson*, 2017 IL App (3d) 150165, ¶ 14 (citing *People v. Busse*, 2016 IL App (1st) 142941, ¶ 27).

¶ 52    Defendant contends, however, that the trial court abused its discretion in determining his sentence because the court failed to adequately consider the mitigating factors presented and did not account for the nonserious nature of the offense.

¶ 53    Despite defendant's contentions about the nonserious nature of the offense, Ong's testimony paints a different picture. First, it is undisputed that defendant threatened to kill Ong multiple times while holding onto his shirt sleeve. Ong also believed that defendant had a deadly weapon. Ong testified that he was scared and believed his "life was at stake." Furthermore, after

Ong pulled over at the gas station, defendant got out of the vehicle and chased Ong before Ong fled into the convenience store. Although Ong acknowledged that defendant could not move very quickly in his intoxicated state, Ong still testified that he was scared and feared for his life. Indeed, the video shows that while following Ong around the vehicle, defendant appeared to speed up at points and never took his eyes off of Ong. Defendant's contention that this was not a serious offense are therefore not well taken.

¶ 54    Defendant nonetheless contends that the trial court did not adequately consider the mitigating factors presented, such as defendant's family life and his work history. Defendant also points out that he was willing to participate in substance abuse treatment and took responsibility for his actions. Defendant maintains that he was entitled to a lower sentence based on these factors.

¶ 55    The record shows, however, that during the sentencing hearing, defense counsel identified the same mitigating factors defendant brings to our attention on appeal, including defendant's family life and his work history. It is not our function to independently reweigh these factors and substitute our judgment for that of the trial court. *Alexander*, 239 Ill. 2d at 214-15. Although the trial court did not specifically identify which factors it considered in determining defendant's sentence, we observe that a trial court is not required to specify on the record the reasons for the sentence imposed (*People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 22), nor is it required to recite and assign value to each factor presented at the sentencing hearing (*People v. Baker*, 241 Ill. App. 3d 495, 499 (1993)). Rather, we presume that the trial court properly considered all mitigating factors and rehabilitative potential before it, and the burden is on defendant to affirmatively show the contrary. *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010). Defendant here has failed to do so.

¶ 56 Further, the record shows that the court expressly considered defendant's remorsefulness in imposing his sentence. After defendant made his statement in allocution in which he expressed his desire to apologize to Ong, the court stated that it was considering a "much higher sentence" before defendant accepted responsibility for his actions. Moreover, after initially imposing a sentence of five and a half years, the court *sua sponte* reduced defendant's sentence to five years based on defendant's courtesy and demeanor in the court room. The record thus shows that the court fully considered the nature of the offense, the mitigating factors presented, and " 'defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *Stevens*, 324 Ill. App. 3d at 1093-94 (quoting *Streit*, 142 Ill. 2d at 19). We therefore find that the trial court did not abuse its discretion in determining defendant's sentence.

¶ 57                                 III. CONCLUSION

¶ 58 For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 59 Affirmed.

¶ 60 PRESIDING JUSTICE GORDON, dissenting:

¶ 61 I must respectfully dissent. The only witness in this case was the driver of the Lyft vehicle and the arresting police officer, as defendant chose not to testify. In my review of the evidence, I cannot find that the conduct of the defendant constituted a substantial step toward hijacking the Lyft vehicle beyond a reasonable doubt. The defendant was intoxicated at the time with a blood-alcohol level of .244. A person named Phyllis[2] used her Lyft account to hail a Lyft vehicle to take him home. He thought the direction the driver was going was wrong, and as a result, he told the driver that he wanted to drive the vehicle to his residence, not steal the vehicle. When he

_____

[2]Phyllis's last name is not found in the record.

wrongfully grabbed the driver's shirt and threatened him, the driver drove into a gas station and called the police. The driver expressed to the arresting police officer that he did not desire to bring charges; he only wanted defendant to be removed from his vehicle, but the police helped change his mind at the gas station. The initial expression of the driver illustrates that the driver never thought that the defendant's conduct was a step toward hijacking the vehicle or that defendant intended to hijack his vehicle. When the defendant stood in front of the vehicle at the gas station holding the driver's house keys and then entered the driver's seat, he was "playing with" the driver as some intoxicated people do when they are under the influence of liquor. The majority writes that in the video "[d]efendant can be seen reaching toward the ignition of the vehicle with the keys in his hand and making a turning motion as though attempting to start the vehicle." *Supra* ¶ 12. However, once defendant went into the driver's side of the vehicle, the video does not show what defendant is doing in the vehicle. That statement is false. There never was any real evidence that the defendant intended to take the vehicle from the driver. The drunken threat and the momentary grabbing of the driver's shirt was caused by the defendant's intoxication and his belief that the driver was not taking the defendant to his residence and was going the wrong way. Any reasonable person believing that a driver of a common carrier is not taking them to where they are supposed to would be terrified and disturbed, especially when that person is under the influence of liquor. In the case at bar, the defendant may have been guilty of assault and battery but not the attempted hijacking of a motor vehicle. This defendant had no criminal record. In aggravation, the State submitted defendant's lack of contrition and defendant's prior convictions for aggravated battery with great bodily harm, for aggravated battery to a police officer, and for possession of a controlled substance. In mitigation, defendant has been a carpenter who provided for four children and is

willing to participate in a substance abuse program. Yet the defendant received a five-year sentence in the IDOC.

¶ 62     For the foregoing reasons, I must respectfully dissent.

---

*People v. Grayer*, 2022 IL App (1st) 210808

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CR-1000201; the Hon. Vincent M. Gaughan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Daniel T. Mallon, and Christina Law Merriman, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian A. Levitsky, and Sharon Kim, Assistant State's Attorneys, of counsel), for the People. |

---