2025 IL App (1st) 230808-U

No. 1-23-0808

Order filed April 4, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 22528 |
| | ) | |
| JOHN HURT, | ) | Honorable |
| | ) | Tiana S. Blakely, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Justices C.A. Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's sentences for murder and concealment of a homicidal death, which were within the statutory range for the offenses, were not excessive.

¶ 2    After a bench trial, John Hurt was found guilty of murder (720 ILCS 5/9-1(a)(1) (West 2012)) and concealment of a homicidal death (720 ILCS 5/9-3.4(a) (West 2012)) and sentenced to concurrent prison terms of 50 years and 5 years, respectively. On appeal, Hurt argues that his sentence is excessive due to his minimal criminal background, difficult upbringing, alcohol

addiction, and "tumultuous" relationship with the victim's mother. We affirm. Based on the evidence presented, the trial court did not abuse its discretion concerning Hurt's sentencing.

¶ 3                                    Background

¶ 4     Hurt was charged with three counts of murder, three counts of aggravated criminal sexual assault, two counts of criminal sexual assault, and one count of concealment of a homicidal death arising out of the killing of 16-year-old J.T. in 2012.

¶ 5     Dione Lafond, J.T.'s mother, and J.T.'s brother, testified that on the day of her death, J.T. planned to pick up her younger sister from a school picnic in Calumet City. After school, her brother went to the picnic, and the younger sister told him that J.T. had never arrived. When he returned to their apartment, Hurt was there, but J.T. was not. Lafond returned after work. Hurt said that he fell asleep around 10 a.m. and was unsure when J.T. left. Lafond found J.T.'s computer running, the money for the picnic, and J.T.'s phone still in the apartment. Lafond filed a missing person's report with the Calumet City Police Department and looked for J.T. throughout the night. Hurt did not help.

¶ 6     The State's evidence further established that the next day, Hammond police corporal David Horniyak responded to a call of a deceased female, later determined to be J.T., found in a dumpster in Hammond, Indiana. Calumet City police commander Timothy Murphy spoke with Lafond, who stated that Hurt had been acting suspiciously and that she believed he was involved in J.T.'s disappearance.

¶ 7     The following day, Murphy learned that Hurt came into the Calumet City Police Department on his own accord. Murphy interviewed Hurt, who inquired about J.T. and referred to her as his daughter. Two Hammond police detectives also spoke with Hurt. The interview was

recorded and published. In the interview, Hurt stated that he killed J.T. in the apartment after she tried to stab him, drove her body to Hammond, disposing of her body in a dumpster.

¶ 8    Forensic pathologist Dr. Zhou Wong testified that he conducted a review of J.T.'s autopsy. Based on his review, he opined that J.T. died of asphyxia due to manual strangulation in the manner of homicide. The evidence of manual strangulation included (i) petechia hemorrhage, pinpoint bleeding from a rupture of the capillaries, on the head and neck caused by compression to the neck and increased pressure in the vein; (ii) a fractured hyoid bone; (iii) evidence of pulmonary edema, meaning fluid in the lungs; and (iv) a tongue bite and brown vomitus from J.T.'s nose and mouth. For manual strangulation, it takes about 10 seconds or more to lose consciousness and 4 to 8 minutes to cause death.

¶ 9    There was also evidence of blunt force trauma to J.T.'s body, including scattered abrasions and contusions on the head and torso, hemorrhages between the scalp and the skull, and fluid in the brain. Additionally, blunt force trauma was observed of the external genitalia consistent with penetration, and a mucosa abrasion of the anus. Dr. Wong opined that these injuries occurred while J.T. was alive. On cross-examination, Dr. Wong could not tell what penetrated J.T.'s anus or vagina, or whether that penetration was consensual.

¶ 10    The trial court found Hurt guilty of two counts of murder and one count of concealment of a homicidal death and not guilty of the sex crimes. The court denied Hurt's motion for a new trial.

¶ 11    Hurt's presentence investigation (PSI) report indicated that he was 27 years old at the time of the offense. He had a history of domestic violence with Lafond, was charged with domestic battery in 2006, and had an alcohol addiction.

¶ 12    A mitigation packet provided details about Hurt's reported physical and emotional abuse from his father and how it impacted his later life choices, including his involvement with Lafond when Hurt was 16 years old and Lafond was 20. The packet argued that Hurt and Lafond's relationship should be characterized as sexual abuse of Hurt. His "volatile" relationship with Lafond led him to abuse alcohol to self-medicate. According to the packet, the events in Hurt's life contributed to his actions in J.T.'s murder, but he possesses the capacity for change.

¶ 13    Lafond and J.T.'s aunt read victim impact statements. The aunt asked the court to consider "how heinous and brutally [Hurt] harmed [J.T.]." Lafond said that Hurt "murdered a whole family," as she will never see her daughter again and J.T.'s siblings are living without a sister.

¶ 14    In aggravation, the State argued that Hurt caused or threatened serious harm and that a sentence is necessary to deter others from committing the same crime. The State highlighted the brutality of Hurt's actions and asked for the maximum allowable sentence.

¶ 15    In mitigation, Hurt argued that his father had physically and sexually abused him at a young age, which led him to self-medicate with alcohol. Hurt also asked the court to consider his lack of criminal history, which consisted of a misdemeanor. Hurt requested a sentence "towards the lower end" of the sentencing range.

¶ 16    In allocution, Hurt stated that one week before the murder, he and J.T. began a sexual relationship. On the day of the murder, while they were having sex, J.T. tried to stab Hurt in the neck with a long wooden knife. Hurt grabbed her arm as a reflex and choked her for what felt like 10 seconds. J.T. continued to attack Hurt, and he pushed her back with "too much force." The push caused J.T. to hit her head on the steel frame of a sliding door, which caused her to bite her tongue and her nose to bleed and left her gasping for air. Hurt "went into shock" and froze. J.T. died, and

Hurt did not call the police or an ambulance because he feared statutory rape and murder charges. Hurt carried J.T.'s body down the stairs, drove to Hammond, placed her in a dumpster, and left for a few days before going to the police station in Calumet City.

¶ 17    The court considered the aggravating and mitigating factors, the victim impact statements, the mitigation packet, and the PSI report. The court noted that Hurt "brutally strangled and beat [J.T.]" and "admitted to this in his statement and the physical evidence is uncontradicted." Further, after dumping J.T.'s body, Hurt did nothing when J.T. was reported missing. The court merged the counts for murder and imposed concurrent prison terms of 50 years for murder and 5 years for concealment of a homicidal death. The trial court denied Hurt's motion to reconsider the sentence.

¶ 18                                             Analysis

¶ 19    On appeal, Hurt argues that his sentence is excessive considering his minimal criminal background, difficult upbringing, alcohol addiction, and tumultuous relationship with Lafond.

¶ 20    "A reviewing court will not alter a defendant's sentence absent an abuse of discretion by the trial court." *People v. Grayer*, 2022 IL App (1st) 210808, ¶ 50. A trial court abuses its discretion where "the sentence is at variance with the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense." *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Courts give deference to the sentencing court's decision because it is better positioned to evaluate the defendant's credibility, habits, demeanor, social environment, mentality, and moral character. *People v. Boyd*, 2021 IL App (1st) 182584, ¶ 75.

¶ 21    The Illinois Constitution states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To attain the constitutionally-mandated balance between the

retributive and rehabilitative purposes of punishment, the trial court must carefully consider all aggravating and mitigating factors, including "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." (Internal quotation marks omitted.) *People v. Hussain*, 2024 IL App (1st) 230471, ¶ 43. Again, the trial court is best suited to assess these factors because it observed the defendant and the proceedings. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010). Accordingly, "[t]he trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *Id*. at 212.

¶ 22    Murder carries a sentencing range of 20 to 60 years' imprisonment. 720 ILCS 5/9-1(a)(1) (West 2012); 730 ILCS 5/5-4.5-20(a) (West 2012). Concealment of a homicidal death has a sentencing range of two to five years' imprisonment. 720 ILCS 5/9-3.4(a), (c) (West 2012); 730 ILCS 5/5-4.5-40(a) (West 2012).

¶ 23    A trial court does not need to recite and assign a value to each aggravating and mitigating factor. *People v. Williams*, 2019 IL App (1st) 173131, ¶ 21. The seriousness of the offense is the most critical factor in determining an appropriate sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. The court need not "give greater weight to mitigating factors than to the seriousness of the offense, nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence." *Id*. We presume that the trial court properly considered all mitigating factors before it, and the defendant bears the burden to show the contrary affirmatively. *Grayer*, 2022 IL App (1st) 210808, ¶ 55.

¶ 24    Hurt admitted to killing J.T., whom he referred to as his daughter, by choking her and pushing her into a steel doorframe. Instead of calling the police or an ambulance to help J.T., Hurt drove J.T.'s body across state lines and threw her body in a dumpster because he did not want to get in trouble. When J.T.'s family realized she was missing and began looking for her, Hurt offered no help. The autopsy showed that J.T. died due to manual strangulation based on evidence of pinpoint bleeding from a rupture of the capillaries on the head and neck caused by compression to the neck and increased pressure in the vein, a fractured hyoid bone, and evidence of fluid in J.T.'s lungs. While Hurt posited he choked J.T. for around 10 seconds, the pathologist stated that it takes 4 to 8 minutes for someone to die due to manual strangulation. Additionally, there was evidence of blunt force trauma to J.T.'s head, torso, genitalia, and anus, which the pathologist opined happened when J.T. was still alive.

¶ 25    Based on the evidence presented, the trial court did not abuse its discretion during sentencing. *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38. When determining the length of a particular sentence, the trial court may consider as an aggravating factor the degree of harm caused to a victim and how the victim's death occurred. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). Here, the court noted the seriousness of the crime, stating that Hurt "brutally strangled and beat [J.T.]" and then disposed of her body. Further, "[i]t is well established that the foreseeable consequences of a defendant's actions on a victim and his family are relevant considerations in sentencing." *People v. Reyna*, 289 Ill. App. 3d 835, 840 (1997) (citing *People v. Pavlovskis*, 229 Ill. App. 3d 776, 782 (1992)). J.T.'s mother and aunt's victim impact statements outlined the hurt the family continues to feel from the loss of J.T.

¶ 26    Hurt, nonetheless, argues that his sentence is excessive in light of "his minimal criminal background, his difficult upbringing that involved physical and sexual abuse, his alcohol addiction and his tumultuous relationship with" Lafond, and his advanced age when he will be released from prison. The record, however, shows that the court was aware of Hurt's criminal record, his upbringing, his addiction, and his relationship with Lafond, as this information was contained in the PSI report. The court is presumed to have properly considered all mitigating factors, absent Hurt's affirmative showing to the contrary. See 730 ILCS 5/5-4-1(a)(2) (West 2020) (requiring trial court, at sentencing hearing, to "consider any [PSIs]"); *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010). Hurt failed to make this showing. Essentially, he urges this court to reweigh the factors and assign greater weight to certain factors than the sentencing court, a task we are not permitted to do. *People v. Scott*, 2015 IL App (1st) 131503, ¶ 48 (reviewing court may not reverse sentence "just because it would have weighed the factors differently"). Based on the record, we find no sentencing error.

¶ 27    Affirmed.